COURT OF APPEALS
DECISION
DATED AND FILED

August 17, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* **WIS. STAT. § 808.10 and RULE 809.62.**

Appeal No. **2020AP1139-CR**

Cir. Ct. No. **2018CF1620**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS DISTRICT I**

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

    V.

LAMONTA WILLIS,

      DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: MICHELLE ACKERMAN HAVAS, Judge. *Affirmed.*

Before Brash, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Lamonta Willis appeals a judgment of conviction, following a jury trial, of one count of attempted armed robbery, as a party to a crime,

and one count of aggravated battery, as a party to a crime. He also appeals from the order denying his postconviction motion. Willis contends that the trial court imposed an excessive sentence. Upon review, we affirm.

## BACKGROUND

¶2      On April 6, 2018, the State charged Willis with attempted armed robbery, as a party to a crime, and aggravated battery with the use of a dangerous weapon, as a party to a crime. The complaint alleged that Willis and another man, Johnny Murphy, entered D.M.'s home while D.M. was sleeping, and demanded to know "[w]here the money at?" When D.M. responded that he did not have money, Willis and Murphy ordered him to the ground. The complaint further states that Willis proceeded to choke and beat D.M., hitting D.M. in the face and head with a liquor bottle.

¶3      The matter proceeded to trial, where D.M. testified consistent with the facts alleged in the complaint. Another co-actor, Romel Antione Nash, testified for the State, telling the jury that on the morning of the incident, Willis and Murphy arrived at Nash's house in a rental car and asked Nash to join them for a "ride." They drove to a residential area and parked in an alley, where Willis and Murphy exited the car with a bag. Nash stated that he was unware of their plans and waited in the car for about twenty to twenty-five minutes before Willis and Murphy returned. Nash testified that when Willis got back into the car he seemed "frantic" and said either "they got [D.M.] or [D.M.] got killed." Nash then attempted to drive away before he was stopped by police.

¶4      Willis also testified, telling the jury that on the day of the incident, he was visiting Milwaukee to attend a concert. While in town, he met a woman, went to her home, and then went to a gas station near her home. Willis stated that while

2

at the gas station, he encountered someone who he thought would give him marijuana. When Willis asked the stranger whether he had marijuana, the stranger said to "follow [him]" and that he would "take care of [Willis]." Willis stated that he followed the man, who led Willis to D.M.'s residence. The man told D.M. to "take care of the fool," and then left. Willis stated that while he was in D.M.'s residence, D.M. stepped into the hallway and "chaos" ensued in the form of two "big" and masked individuals telling Willis to get on the ground. Willis said that one of the individuals held him down, while the other "battle[d]" with D.M.

¶5     The jury found Willis guilty as charged. At sentencing, the State requested a sentence of twenty-two years of incarceration, consisting of fifteen years of initial confinement followed by seven years of extended supervision. The State noted that Willis already had three prior convictions for burglary in Illinois where he is from: two from 2010, as well as one from 2014 for which Willis was still on parole when he committed this offense. Willis's counsel requested five years of initial confinement for the attempted robbery count, and three years of initial confinement followed by three years of extended supervision on the aggravated battery count, to be served concurrently. Willis exercised his right of allocution, telling the trial court that he was "sorry for everything that happened," but that he was a "good guy" on the "wrong road."

¶6     The trial court sentenced Willis to twelve years of initial confinement and seven years of extended supervision on the attempted armed robbery count followed by a consecutive six years of imprisonment consisting of three years of initial confinement and three years of extended supervision for the aggravated battery count.

3

¶7      Willis filed a motion seeking resentencing "on the grounds that the court abused its discretion when it imposed a near maximum sentence in this case." The postconviction court denied the motion. This appeal follows.

## DISCUSSION

¶8      On appeal, Willis contends that his sentence is excessive and unsupported by the record. Specifically, he contends that the trial court failed to explain why his sentence is "the minimum term needed to meet the applicable sentencing objectives," why the trial court imposed close to the maximum sentence, and why the trial court imposed consecutive sentences. (Bolding and capitalization omitted.)

¶9      Sentencing is committed to the trial court's discretion. *State v. Gallion*, 2004 WI 42, ¶17, 270 Wis. 2d 535, 678 N.W.2d 197. A defendant challenging a sentence "has the burden to show some unreasonable or unjustifiable basis in the record for the sentence at issue." *State v. Lechner*, 217 Wis. 2d 392, 418, 576 N.W.2d 912 (1998). We start with a presumption that the trial court acted reasonably, and we do not interfere with a sentence if discretion was properly exercised. *See id.* at 418-19. In its exercise of discretion, the trial court must identify the objectives of its sentence, including but not limited to protecting the community, punishing the defendant, rehabilitating the defendant, and deterring others. *Gallion*, 270 Wis. 2d 535, ¶40. The trial court must consider a variety of factors, including the gravity of the offense, the character of the defendant, and the need to protect the public. *See State v. Harris*, 2010 WI 79, ¶28, 326 Wis. 2d 685, 786 N.W.2d 409. The weight assigned to the various factors is left to the trial court's discretion. *Id.* Moreover, the amount of necessary explanation of a sentence varies from case to case. *Gallion*, 270 Wis. 2d 535, ¶39.

4

¶10     A sentencing court also has considerable discretion in determining the length of the sentence within the permissible statutory range, *Hanson v. State*, 48 Wis. 2d 203, 207, 179 N.W.2d 909 (1970), and a trial court is not obligated to specifically explain why it imposed consecutive instead of concurrent terms as long as the court articulates a rationale for the overall sentence. *State v. Berggren*, 2009 WI App 82, ¶¶45-46, 320 Wis. 2d 209, 769 N.W.2d 110. A sentencing court "must provide an explanation for the general range of the sentence imposed, not for the precise number of years chosen, and it need not explain why it did not impose a lesser sentence." *State v. Davis*, 2005 WI App 98, ¶26, 281 Wis. 2d 118, 698 N.W.2d 823.

¶11     We also review an allegedly harsh and excessive sentence for an erroneous exercise of discretion. *See State v. Giebel*, 198 Wis. 2d 207, 220, 541 N.W.2d 815 (Ct. App. 1995). "A sentence well within the limits of the maximum sentence is not so disproportionate to the offense committed as to shock the public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *State v. Daniels*, 117 Wis. 2d 9, 22, 343 N.W.2d 411 (Ct. App. 1983).

¶12     We reject Willis's claim because the record clearly shows that the trial court properly exercised its discretion at sentencing. In rendering its decision, the trial court addressed the *Gallion* factors, discussed Willis's previous convictions, the brutality of the attack on D.M., the amount of blood found at the scene, the credibility of the witnesses, the preparation involved in the attack on D.M., and Willis's failure to accept responsibility. The trial court was not required to explain why it imposed consecutive sentences, *see Berggren*, 320 Wis. 2d 209, ¶¶45-46, and the record establishes that the trial court imposed sentences within the limits of

the maximum sentences. The trial court explained its reasoning for imposing the particular sentences.

¶13 For the foregoing reasons, we affirm the trial court.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).